**SOUTHBRIDGE PLASTICS DIVISION, W. R. GRACE AND COMPANY, Plaintiff,**

v.

**LOCAL 759, INTERNATIONAL UNION OF the UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, and the Equal Employment Opportunity Commission, Defendants.**

**No. EC 74-90-S.**

United States District Court,
N. D. Mississippi, E. D.

Nov. 3, 1975.

**1184**

Charles E. Sykes, Lincoln, Neb., and Jeffery H. Orleans (EEOC), Washington, D. C., for plaintiff.

Charles R. Wilbanks, Corinth, Miss., and Harley M. Kastner and Charles R. Armstrong, Akron, Ohio, for defendant.

MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This case requires the court to resolve the question of what effect is to be given a duly executed conciliation agreement between an employer and the Equal Employment Opportunity Commission ("EEOC" hereinafter) when certain of the provisions contained in such agreement conflict with the terms of a previously executed collective bargaining agreement between the employer and its employees' bargaining agent.

Plaintiff herein, Southbridge Plastics Division, W. R. Grace & Co. (hereinafter "Southbridge"), employs approximately 600 hourly workers at its Corinth, Mississippi facility. The defendant, Local 759 International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America (hereinafter "the union") is a labor organization with approximately 420 members, of whom approximately 99 percent are employed by Southbridge. The union has few, if any, female members; however, Southbridge's female employees are represented by the union for purposes of collective bargaining.

Prior to April, 1974, Southbridge employed no females in a production, laboratory, or maintenance capacity at its Corinth facility. On or about April 1, 1974, Southbridge began hiring females in the aforementioned fields on the same terms as males. The instant dispute grows out of the contention of male union members that, due to their seniority at the Southbridge plant, they are to be preferred over the female employees in shift assignments and in case of layoff.

The dispute was culminated by South-bridge's refusal to arbitrate grievances filed by several of the union members as the union maintains is required by the bargaining agreement. Southbridge refuses to arbitrate the grievances because, it maintains, if the arbitrator's decision were favorable to the union members, Southbridge would be required to shunt some of its female employees to different (and, inferentially, less desirable) shifts and to layoff others, solely because of their lack of seniority. Southbridge contends that actions of this sort, even when required as incident to an arbitral decision, would be violative of Title VII of the Civil Rights Act of 1964, as well as the provisions of the conciliation agreement now in effect between Southbridge and the EEOC.[1] To extricate itself from this unenviable dilemma, Southbridge filed this suit seeking an injunction to preclude the union from utilizing the clauses of the collective bargaining agreement upon which it relies in initiating and processing the instant grievances. The union counter-claimed that Southbridge should be required to arbitrate the union members' grievances concerning seniority in the manner set forth in the bargaining agreement.

Southbridge found itself in difficulty with the EEOC as a result of charges lodged with that agency by certain of Southbridge's female employees. The EEOC's investigation of the charges resulted in a determination by the commission that reasonable cause existed to believe that Southbridge had engaged in unlawful employment practices in its treatment of females in hiring and job classifications and that the system of departmental and plant-wide seniority provided for in the collective bargaining agreement now in effect at Southbridge's Corinth plant is unlawful because it perpetuates the effect of past discrimination against women.

To square itself with the EEOC regarding its female employees, Southbridge entered into a formal conciliation agreement, the portions of which are here in dispute read as follows:

"[A]ll recruiting, hiring, training, compensation, overtime, job classifications and assignments, working conditions and privileges of employment shall be maintained and conducted in a manner which does not discriminate on the basis of race, color, sex, religion or national origin in violation of Title VII of the Civil Rights Act of 1964, as amended.

.    .    .    .    .    .

[N]otwithstanding any provision(s) of any collective bargaining agreement to which it is a party at its Corinth facility, including a contract with the International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America and its Local

---

1. As will be explained further, *infra*, the conciliation agreement was not formally executed by Southbridge and the EEOC until after the institution of this action.

Union Number 759, [Southbridge] will adhere to the following:

a. No female employee, whether employed at the present time or hired at a future date, will be removed from her job or her shift by a male employee by utilization of the shift preference provisions of any collective bargaining agreement in effect at the Corinth facility.

b. In the event that it becomes necessary for [Southbridge] to lay off employees who are covered by any collective bargaining agreement in effect at the Corinth facility and said layoff will result in females being laid off if the applicable provisions of the collective bargaining agreement were utilized in a greater percentage than they constitute of the bargaining unit, the following procedure will be utilized:

(1) Female employees will be laid off in direct proportion to the percentage which they make up of a bargaining unit covered by a collective bargaining agreement. For example: If in a bargaining unit covered by a collective bargaining agreement which has four hundred (400) members of which three hundred (300) are male [sic] and one hundred (100) females who have less plant seniority than the males, [Southbridge] decides to lay off one hundred (100) employees, then since females constitute 25 percent of the bargaining unit, twenty-five (25) females in order of their seniority will be laid off.

(2) In no event will any female employee be laid off by utilization of the foregoing procedure if she would not have been laid off if the applicable contract provisions were utilized. For example if [Southbridge] were to lay off one hundred (100) employees in accordance with the terms of the applicable collective bargaining agreement and only ten (10) females would be laid off, then only ten (10) females will be laid off.

The union declined an invitation to sign the conciliation agreement executed between Southbridge and EEOC but, instead, insisted on strict adherence to the following provisions of the collective bargaining agreement:

Seniority is preference or priority measured by length of service with definite rights qualifying for employment when work is available, the purpose of which is to provide a declared policy of work security measured by length of service subject to the limitations set out in [the bargaining] agreement.

. . . . . .

In the event of a reduction in the work force, employees will bump downward by classification in line with seniority and qualifications within their department.

If no job openings are available within the department, employees will replace employees with less seniority in an equal or lower classification, if qualified, and will be placed on their shift of preference. The affected employees will be laid off in accordance with their plant wide seniority, the youngest employee in point of service shall be laid off first. The placing of employees in openings created by laying off the least senior employee will be by seniority when the employee is qualified to perform the job.

It is easily observed that the above-stated terms of the bargaining agreement would, in the event of a reduction in work force, result in much harsher treatment of Southbridge's female employees, all of whom have been hired since April 1, 1974, than the treatment which will accrue to the male employees, the vast majority of whom have seniority greatly in excess of the females.

Subsequent to the execution of the conciliation agreement, Southbridge obtained leave of court to file an amended complaint which named the EEOC as a party defendant. The EEOC basically agrees with Southbridge concerning the effect of the conciliation agreement upon

certain of the terms of the bargaining agreement.

The merits of the case were submitted to the court upon cross summary judgment motions, the parties agreeing that, pursuant to Fed.R.Civ.P. 56, there is no genuine issue as to any material fact and judgment as a matter of law must be granted to either the union or the EEOC and Southbridge. Additionally, and to complete the scenario, the union has moved the court to dismiss the cross-claim filed by the EEOC for failure to state a claim and because of lack of subject matter jurisdiction.

■ Considering first the motion to dismiss the EEOC's cross-claim, the union argues that the claim is not maintainable because it is in effect an action by the EEOC pursuant to 42 U.S.C. § 2000e–5 against a respondent (the union) which has not been the subject of a charge of discrimination as required in the aforementioned statute. The court, however, does not perceive the cross-claim filed by the EEOC to be in the nature of an action against the union. In fact, the EEOC's cross-claim against the union contains no allegations of discrimination. Additionally, the dispute here is between the employer and the union regarding the enforceability of certain of the terms of their collective bargaining agreement. Jurisdiction is therefore proper under 29 U.S.C. § 185.

The relief sought by the Commission in its cross-claim is merely ancillary to the relief sought by Southbridge in its complaint, that is, an adjudication that the provisions of the conciliation agreement abrogate certain of the terms of the bargaining agreement. On this point, the court has concluded that joinder of an uncharged union is permissible where a complete resolution of the Title VII claims before the court requires the interpretation of the collective bargaining agreement. *Kinnunen v. American Motors Corp.*, 56 F.R.D. 102 (E.D.Wis. 1972); *Reyes v. Missouri-Kansas-Texas R. R.*, 53 F.R.D. 293 (D.Kan.1971). In the case at bar, the lack of a charge

against the union does not prevent the court from considering the declaratory relief sought in the commission's cross-claim insomuch as the issue is not whether the union has unlawfully discriminated against Southbridge's female employees but, rather, whether the terms of the conciliation agreement override the terms of the bargaining agreement. Accordingly, the court is of the opinion that the union's motion to dismiss is not well taken.

■■ Turning now to the summary judgment motions, the court has considered the motions at length and has concluded that the terms of the conciliation agreement should be, and are, binding upon all the parties to the suit in spite of the conflicts between some of the provisions in it and certain of the terms of the bargaining agreement.

The issue for the court's determination on this point reduces to whether, under Title VII, the operation of the seniority system as set forth in the bargaining agreement may be altered to the extent necessary to alleviate the present effects of past illegal discrimination against female job applicants at Southbridge, or whether the seniority system here falls under the protection of the "bona fide" seniority system exemption of § 703(h) of Title VII. (42 U.S.C. § 2000e–2(h)). The court has concluded that the provisions of the bargaining agreement relating to seniority in the event of layoff does not fall within the protection of the exemption. This conclusion is reinforced by the recent decision in *Watkins v. United Steel Workers, Local 2369*, 516 F.2d 41 (5th Cir. 1975). The court in *Watkins* was faced with a similar employment discrimination situation wherein the plaintiff class, there minority employees, sought protection from a last-hired first-fired layoff policy of their employer. Although the *Watkins* court refused any relief because none of the plaintiffs could show themselves to have been the subject of prior employment discrimination, the issue in the case at bar was not squarely confronted or decided there.

We specifically do not decide the rights of a laid-off employee who could show that, but for the discriminatory refusal to hire him at an earlier time than the date of his actual employment or but for his failure to obtain earlier employment because of exclusion of minority employees from the work force, he would have sufficient seniority to insulate him against layoff. 516 F.2d at 45.

The court conceives the situation before it to be precisely that contemplated but undecided by the court in *Watkins*. The employer here has a very recent history of employment discrimination and the female employees who are here seeking relief from the last-hired first-fired policy contained in the bargaining agreement are among the first females hired by the employer when the policy of complete exclusion of females was terminated in April of 1974. In the mind of the court, it is beyond question that the female employees here failed to obtain earlier employment because of Southbridge's previous policy of total exclusion of women from its work force in the job classifications here in issue.

The union urges a different conclusion upon the court and grounds its argument on *Jersey Cent. Power & Light Co. v. Local 327, UBEW*, 508 F.2d 687 (3rd Cir. 1975). In that employment discrimination case under Title VII, the Court of Appeals concluded "in light of the legislative history [of § 703(h) of Title VII of the Civil Rights Act of 1964] that on balance a facially neutral company-wide seniority system, *without more*, is a bona fide seniority system and will be sustained even though it may operate to the disadvantage of females and minority groups as a result of past employment practices." 508 F.2d at 710 (emphasis in original). Assuming arguendo that the Third Circuit's statement of the law in *Jersey Central* is correct, the union's position remains untenable insomuch as

the *Jersey Central* opinion recognized that where there are causational factors present in addition to a facially neutral seniority system which result in a disproportionately adverse impact upon women and minority groups, then remedial alteration of the seniority system may be justified. In the mind of the court, the *Jersey Central* and *Watkins* opinions are in tune and both justify the court's action of today.

Because these females were precluded from employment by Southbridge's previous discriminatory policies, the court has concluded that adherence to the seniority privileges as set forth in the bargaining agreement would result in present discrimination against Southbridge's women employees on the basis of past discrimination. The court feels that the limited modification of that portion of the collective bargaining agreement which the employer and the EEOC seek, as reflected in the previously-quoted provisions of the conciliation agreement, is necessary to effectuate the goals of Title VII.

The court is of the opinion that no useful purpose would be served by requiring arbitration of the grievances filed by the union members. Since the arbitrator should not and could not go beyond the bounds of the collective bargaining agreement in resolving the dispute before him, he or she would be unable to consider the effect of Title VII upon the relative rights of the parties. "[T]he arbitrator has authority to resolve only questions of contractual rights . . . ." *Alexander v. Gardner, Denver Co.*, 415 U.S. 36, 53–54, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147, 161 (1974). Arbitration under these conditions would be futile and pointless.

Counsel for the EEOC and Southbridge will prepare and submit to the court, within twenty (20) days, a joint proposed order for entry by the court embodying the disposition of the motions sub judice as set forth heretofore.