759 F.2d 489
 119 L.R.R.M. (BNA) 2296, 103 Lab.Cas. P 11,497
 HMC MANAGEMENT CORPORATION, d/b/a The Louisiana Superdome,
Plaintiff-Appellee,
v.
CARPENTERS DISTRICT COUNCIL OF NEW ORLEANS AND VICINITY, and
Carpenters Local No. 1846, Defendants-Appellants.
CARPENTERS DISTRICT COUNCIL OF NEW ORLEANS AND VICINITY, and
Carpenters Local No. 1846, Plaintiff-Appellants,
v.
HMC MANAGEMENT CORPORATION, d/b/a The Louisiana Superdome,
Defendant-Appellee.
 No. 84-3184.
 United States Court of Appeals,
Fifth Circuit.
 May 6, 1985.
 
 Louis L. Robein, Jr., Metairie, La., for defendants-appellants.
 Lawrence D. Levien, Paul M. Eskildsen, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana; Adrian G. Duplantier, Judge.
 ON SUGGESTION FOR REHEARING EN BANC
 (Opinion 1/21/85, 5 Cir., 1985, 750 F.2d 1302)
 Before REAVLEY, POLITZ, and HIGGINBOTHAM, Circuit Judges.
 PER CURIAM:
 
 
 1
 Treating the suggestion for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED. The judges in regular active service of this Court having been polled at the request of one of said judges and a majority of said judges not having voted in favor of it (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.
 
 
 2
 Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS and HILL, Circuit Judges.
 
 
 3
 JERRE S. WILLIAMS, Circuit Judge, with whom ALVIN B. RUBIN, RANDALL, TATE, JOHNSON, E. GRADY JOLLY and W. EUGENE DAVIS, join, dissenting:
 
 
 4
 It is most unfortunate for the important role that arbitration plays in the settlement of contract disputes in labor relations that the Court did not agree to an en banc reconsideration of the holding by the panel in this case. 750 F.2d 1302 (5th Cir.1985). I must dissent from the order of the Court.
 
 
 5
 It is my view that the skilled and highly respected labor arbitrator in this case made clear in his award that he was basing his decision on one of the most elementary of established principles in the administration of the "just cause" standard for discipline, the standard most common in labor contracts. It is universally held by arbitrators and upheld by the courts that the just cause standard requires that discipline be assessed and carried out without discrimination. The contract clause prohibits an employer assessing different disciplines for the same offense to two employees in exactly the same situation. Yet, that is exactly what happened in this case.
 
 
 6
 There is virtual universal acceptance that discriminatory discipline violates "just cause" disciplinary standards in contracts even though the word discrimination never appears in that context. As it is stated in one of the basic works, Elkouri and Elkouri, HOW ARBITRATION WORKS, p. 643:
 
 
 7
 It is generally accepted that enforcement of rules and assessment of discipline must be exercised in a consistent manner; all employees who engage in the same type of misconduct must be treated essentially the same unless a reasonable basis exists for variations in the assessment of punishment (such as different degrees of fault or mitigating or aggravating circumstances affecting some but not all of the employees).
 
 
 8
 See also 1 Werne, ADMINISTRATION OF THE LABOR CONTRACT, Sec. 20.61: "A generally accepted precept is that the same or equivalent penalties should be meted out to all who are found guilty of the same offenses."
 
 
 9
 The panel opinion held, however, that the application of this principle was not adequately dealt with in the arbitration award. The critical operative words of the arbitration award are found in this single paragraph:
 
 
 10
 Notwithstanding the contentions of the Employer to the contrary, the Arbitrator cannot rightfully find that the discharge of the Grievant and Mr. Dale and the subsequent rehiring of only Mr. Dale under the circumstances here presented was proper. The record indicates that the Grievant and Mr. Dale were both working under the same disciplinary probation and written warning at the time of their discharge. Both employees were told that any incident which occurred during the probationary period would result in immediate dismissal. It is further shown by the record that both employees were performing the same tasks in the same location on July 1 and July 2, 1980, which resulted in the decision to dismiss them. Presented with the record in this posture, the Arbitrator is constrained to find that while there may have been adequate grounds to discharge both employees, the Employer acted improperly when it decided to rehire Mr. Dale but not the Grievant. Particularly does this appear to be so in light of the failure of the Employer to afford the Grievant the opportunity to attend meetings concerning the grievance while Mr. Dale was permitted such opportunity. Such disparate treatment, notwithstanding the contention of the Employer to the contrary, is not excused, in the judgment of the Arbitrator, by the Grievant and Mr. Dale having received exactly the same punishment for their conduct.
 
 
 11
 The panel held that this award does not flow from the "essence of the collective bargaining agreement" because the arbitrator did not say in so many words that the discriminatory treatment between the two disciplined employees was part of the just cause requirement. Yet, it is clear from the arbitrator's award that while he found possible justification for discharge of both employees and while it was conceded that both employees were in exactly the same situation, he concluded that the reinstatement of only one of the two employees did result in "disparate treatment". Yet, the opinion of the Court requires that the case be sent back to the arbitrator so that he can say this with court ordered unnecessary precision. Such a remand is a useless act when it is clear that the arbitrator was applying well established principles in interpreting and applying the labor agreement to this dispute. In making such a semantic distinction, the panel is moving in the direction of requiring unnecessary "boilerplate" language by arbitrators to state that their decisions are derived from the essence of the collective bargaining agreements.
 
 
 12
 The decision of this Court which stands because of the denial of rehearing en banc sets up a rigidity and breadth in the review of arbitration awards which goes far beyond anything sanctioned by the developed law of the United States Supreme Court under the famous trilogy United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
 
 
 13
 It also moves significantly away from the law of this Circuit. Since the Supreme Court's trilogy, this Court has decided some 32 published opinions considering directly or indirectly whether an arbitration award drew its essence from the collective bargaining agreement. In addition, of course, there have been a substantial number of unpublished opinions. Of the published opinions there have only been three cases in addition to this case where an arbitration award has been set aside by this Court as failing to be based upon the essence of the agreement. In one of those cases, W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber, Cork, Linoleum, and Plastic Workers of America, 652 F.2d 1248 (5th Cir.1981), this Court upheld one arbitrator's award but set aside another award because the latter award did not even purport to follow the contract. It was based upon "fairness and equity" with no reference at all to any contract provisions.
 
 
 14
 In Amalgamated Meat Cutters & Butcher Workmen of North America, AFL-CIO, Local Union 540 v. Great Western Food, 712 F.2d 122 (5th Cir.1983), we set aside an arbitrator's award which required the company to reinstate as an employee a truck driver who overturned his over-the-road eighteen-wheel truck rig while drinking on duty. He was issued a citation by the state police for his misconduct. The rationale, of course, was extreme public policy considerations.
 
 
 15
 The third case is General Warehousemen and Helpers, Local 767 v. Standard Brands, Inc., 579 F.2d 1282 (5th Cir.1978) (en banc). In that case we refused to enforce an arbitrator's award which gave super seniority to the employees at the old plant when they moved to a new plant where a bargaining contract and seniority rights had already been established with respect to the employees already there, the contract not calling for super seniority.
 
 
 16
 These are the sum total of our published cases refusing to enforce awards as departing from labor contracts. It is readily noted that they are far removed from the instant case in which the clear implication and intent of the arbitrator's decision is to follow the well established equal administration of discipline requirement implied in "just cause" disciplinary standards in collective agreements.
 
 
 17
 In Mason and Hanger--Silas Mason Co., Inc. v. Metal Trades Council of Amarillo, Texas, and Vicinity, AFL-CIO, 726 F.2d 166, 167, 168 (5th Cir.1984), we said in upholding an arbitrator's decision: "The important thing is that his decision was without question based upon the provisions of the collective bargaining agreement. That is all that is required by the 'draw its essence' test.... [The] arbitrator obviously used the interpretation and application of the words of the collective bargaining agreement as the sole justification for his decision." It is clear that the arbitrator in the case before us met this standard. In Int'l Ass'n of Machinists and Aerospace Workers, Dist. No. 145 v. Modern Air Transport, Inc., 495 F.2d 1241, 1245 (5th Cir.1974), the arbitrator held that the word "customarily" in the collective agreement actually meant "exclusively". The district court held that the arbitrator had moved beyond his authority under the contract. We reversed and held that the arbitrator's interpretation was "well within the essence standard" as derived from the "letter and purpose of the collective bargaining agreement".
 
 
 18
 Cases such as these two demonstrate with clarity that the panel opinion in the case before us abandoned the well established principles which have been developed by this Court over the 26 years following the decisions in the Supreme Court's trilogy. In Int'l Ass'n of Machinists and Aerospace Workers, Dist. No. 776 v. Texas Steel Co., 538 F.2d 1116, 1121 (5th Cir.1976), we stated: "[T]he essence standard is to be interpreted expansively so as to uphold the award rather than restrictively. See United Steelworkers of America, AFL-CIO v. U.S. Gypsum Co., 492 F.2d 713, 731-732 (5th Cir.), cert. denied, 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974)."
 
 
 19
 Even assuming, however, that the arbitrator's award in this case is inadequate in establishing a nexus between the discriminatory reinstatement and the just cause standard for discipline, the panel oversteps the proper bounds of the restricted review of labor arbitration awards. This panel reversed a decision by an arbitrator that we normally would not reverse even if it had been made by a federal district court. The scope of review of district court decisions is supposed to be much broader than the review of arbitration awards. We review district court judgments on the merits. Yet, "the arbitrator's award is not subject to judicial review on the merits, for '[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had final say on the merits of awards.' " Piggly Wiggly Operators' Warehouses, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers' Union, Local No. 1, 611 F.2d 580, 583 (5th Cir.1980), quoting from the Enterprise Wheel & Car Corp. case of the trilogy, 363 U.S. at 596, 80 S.Ct. at 1360.
 
 
 20
 This Court here refuses to accept an arbitration award because of a vision of the nicety of wording. We would not reverse a district judge on this ground. Even assuming the arbitrator's support for his award was erroneous, the award should have been upheld. It is the established law that a judgment should be upheld on review if the result is correct, even if it was based by the district court upon an improper ground. Howard v. Gonzales, 658 F.2d 352, 358 (5th Cir.1981); Church of Scientology of California v. Cazares, 638 F.2d 1272, 1282 (5th Cir.1981). Since this is the law as to the review of district court decisions, how much more so should it be the law under the restricted review of arbitration awards.
 
 
 21
 It might be urged that en banc rehearing is not justified because this particular case will have no serious impact upon the usual principles restricting judicial review of labor arbitration awards. After all, the case is simply referred back to the arbitrator for a rewording of his opinion. And it would be remarkable, indeed, if he did not reword his opinion to suit since it is clear that he was following the contract in making his award.
 
 
 22
 Unfortunately, however, the impact of the holding of the Court cannot be so readily eased. This opinion constitutes a constant invitation to a party dissatisfied with a labor arbitration award to search the award word by word and to parse each sentence to see if a presumed defect in the award can be found. Even if a court finds no defect or can be persuaded that all that needs to be done is to return the case to the arbitrator for clarification, we have compounded in drastic measure the time involved in resolving these disputes and, even more important, the expense of resolving these disputes. Labor arbitration carries the distinct advantage of being a prompt and an inexpensive remedy. Adding frequent judicial review at the end of the process destroys its advantages. Decisions such as that of the panel in this case encourage and enable parties with the greater financial resources to wear down the opposing parties in the arbitrations through the extraordinary and unjustified delay and expense.
 
 
 23
 These considerations make the decision of the panel clearly enbancworthy, and I must dissent from the Court's unwillingness to give this case the consideration it deserves in view of the unsettling holding of the panel opinion.